UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

═══════════════════════════════════════

CALVIN JACKSON,

                              Plaintiff,

                                                        9:04-CV-0340
          -v.-                                          (GLS/GHL)

R. MILICEVIC, Medical Director, Eastern NY
Correctional Facility; M. GUSMAN, Doctor,
Eastern NY Correctional Facility; and
R. RIORDAN, Nurse Administrator, Eastern NY
Correctional Facility,

                              Defendants.

═══════════════════════════════════════

APPEARANCES:                                    OF COUNSEL:

CALVIN JACKSON, 97-A-4561
  Plaintiff, *Pro Se*
Wallkill Correctional Facility
Box G
Wallkill, NY 12589

HON. ANDREW M. CUOMO                             JEFFREY P. MANS, ESQ.
Attorney General for the State of New York      Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY  12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

          This matter has been referred to me for Report and Recommendation by the Honorable Gary

L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y.

72.3(c).  In this *pro se* civil rights action brought under 42 U.S.C. § 1983, Inmate Calvin Jackson

("Plaintiff") alleges that, between March of 2000, and November of 2004, three employees of the

New York State Department of Correctional Services who worked at Eastern Correctional Facility--

Dr. Raelene Milicevic, Dr. M. Gusman, and Nurse Robin Riordan ("Defendants")--violated his

rights under the Eighth Amendment by being deliberately indifferent to his serious hemorrhoidal

condition and related symptoms.  (Dkt. No. 1.)  Currently before the Court is Defendants' motion

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 40.)

For the reasons discussed below, I recommend that Defendants' motion be granted.

I.      BACKGROUND

       A.      **Plaintiff's Complaint**

              1.      **Factual Allegations**

Liberally construed, Plaintiff's Complaint alleges as follows.  On or about March 29, 2000,

Plaintiff complained to medical care providers at Eastern Correctional Facility ("Eastern C.F.") of

rectal bleeding and hemorrhoids.  (Dkt. No. 1, ¶ 11).  That same day, he was given suppositories.

(*Id*.)

On or about March 29, *2001* (one year after his previous complaint), Plaintiff again

complained of rectal bleeding and hemorrhoids.  (*Id*. at ¶ 12.)  That same day, he was again given

suppositories and was scheduled to see a doctor on June 7, 2001.  (*Id*.)

On June 7, 2001, Plaintiff was examined by a physician, who diagnosed him with an

"external hemorrhoid and big amounts [sic] of mucus discharge."  (*Id*. at ¶ 13.)  In addition, the

physician referred Plaintiff to a specialist and noted that Plaintiff had relatives who had "suffered

with or expired from colon cancer."  (*Id*.)

On or about August 20, 2001, the aforementioned specialist, Dr. Benedict J. Maliakkal,

examined Plaintiff and referred him for surgery.  (*Id*. at ¶¶ 15, 34.)  On or about August 22, 2001,

Plaintiff was examined by another physician, who requested a follow-up visit with Plaintiff in two months.  (*Id*. at ¶ 16.)

During that follow-up visit, which occurred on November 19, 2001, a physician recommended surgery on Plaintiff's colon within the following two months, due to "constant signs of mucus drainage."  (*Id*. at ¶ 17.)  On or about November 23, 2001, Plaintiff was examined by an "outside specialist" (i.e., a specialist who did not work at Eastern C.F.), who ordered a "full colonoscopy" due to visible "mucus drainage."  (*Id*. at ¶ 18.)

On December 13, 2001, the colonoscopy was performed at Albany Medical Hospital.  (*Id*. at ¶ 19.)  During the colonoscopy, the surgeon removed three polyps from Plaintiff's sigmoid and transverse colon.  (*Id*. at ¶ 19.)

On September 3, 2002, Plaintiff complained of "excessively bleeding hemorrhoids."  (*Id*. at ¶ 20.)  That same day, he was given hemorrhoidal cream and suppositories.  (*Id*.)  Approximately two weeks later, on September 17, 2002, Plaintiff complained of "bleeding and hemorrhoidal pain and swelling."  (*Id*. at ¶ 21.)  That same day, he was again given suppositories.  (*Id*.)

On or about March 7, 2003, Plaintiff returned to the hospital and "complained of his serious medical problems with his hemorrhoids, [and] feared that there may be other problems as a result of seeing blood in his stool."  (*Id*. at ¶ 22.)

On or about April 28, 2003, Plaintiff was examined by "the medical staff" at Eastern C.F., who diagnosed him with "mild internal hemorrhoids."  (*Id*. at ¶ 23.)

On or about May 5, 2003, Plaintiff complained about "severe discomfort and pain resulting from the problems he was having as a result of the hemorrhoids."  (*Id*. at ¶ 24.)

On or about June 6, 2003, Plaintiff returned to the hospital and complained of "his serious

medical problems with hemorrhoids," and further stated, "I think I am having problems with my prostate." (*Id*. at ¶ 25.) As a result, a nurse scheduled Plaintiff to see a physician on June 19, 2003. (*Id*.)

On or about June 19, 2003, Plaintiff was seen by Defendant Gusman. (*Id*. at ¶ 26.) At this time, Plaintiff requested "an examination of his prostate to determine if there was an ongoing problem and if the hemorrhoids and the constant bleeding [were] related." (*Id*.) In response, Defendant Gusman "ridiculed, embarrassed, and made fun of" Plaintiff, using "sarcasm[] and unprofessional comments." (*Id*.) Plaintiff then "insisted . . . [that Defendant Gusman examine his prostate] and requested that [he] take notice that there was stained and bloody underwear as proof of [Plaintiff's] claim that there existed a sever[e] problem." (*Id*. at ¶ 27.) Although Defendant Gusman refused to examine Plaintiff's stained and bloody underwear, he examined Plaintiff's prostate. (*Id*.) As a result of Plaintiff's having "severe external hemorrhoids[] and [a] mild to moderate enlargement of [his] prostate," Defendant Gusman gave Plaintiff a two-week supply of antibiotics and referred him to a "Gastro Intestinal Specialist." (*Id*. at ¶ 29.)

On or about July 14, 2003, Plaintiff filed a grievance against the Eastern C.F. medical department for failing to adequately treat his hemorrhoid condition, and for Defendant Gusman's remarks on June 19, 2003. (*Id*. at ¶¶ 30-31.) On or about July 16, 2003, Defendant Riordan was interviewed regarding Plaintiff's grievance. (*Id*. at ¶ 32.) During that interview, Defendant Riordan (a nurse) stated that Plaintiff had "a huge external hemorrhoid" and that an evaluation was needed to determine if further surgery was necessary. (*Id*. at ¶ 32.)

On or about August 12, 2003, Plaintiff again complained of "hemorrhoidal bleeding and pain." (*Id*. at ¶ 33.) That same day, he was given suppositories. (*Id*.)

4

On September 15, 2003, Plaintiff was transported to the Coxsackie Medical Facility, where he was evaluated by Dr. Maliakkal.  (*Id*. at ¶ 34.)  At that time, Dr. Maliakkal made the following four recommendations: (1) that Plaintiff take Metamucil (which Plaintiff subsequently requested of someone but never received), (2) that Plaintiff avoid garlic, (3) that Plaintiff receive a "surgical consult" for hemorrhoids, and (4) that Plaintiff take two grams of fish oil per day (which Plaintiff subsequently "never received." (*Id*.)

On September 16, 2003, Plaintiff filed a second grievance against the Eastern C.F. medical department.  (*Id*. at ¶ 35.)  Liberally construed, Plaintiff's grievance alleged that the medical department had prevented Plaintiff from appealing the denial of his previous grievance (and thus exhausting his available administrative remedies) by inaccurately representing to the Inmate Grievance Resolution Committee ("IGRC") that Plaintiff's grievance should be denied because he had been scheduled for the surgery that he had been requesting in the grievance.  (*Id*.)  The IGRC's response, according to Plaintiff, was "grievant . . . cannot be penalized for signing off his [sic] prior grievance.  Per investigation and Directive 4040." (*Id*.)

On or about October 27, 2003, Plaintiff complained of bleeding hemorrhoids.  (*Id*. at ¶ 36.)  That same day, Plaintiff was seen by a nurse, who, "upon looking [at Plaintiff's medical] records[,] realized that [the] plaintiff was supposed to have been scheduled to see a doctor on 10-6-03." (*Id*.)  The nurse then "immediately rescheduled [the] plaintiff to see [a] doctor on 10-29-03." (*Id*.)

On October 29, 2003, Plaintiff was examined by a physician, who diagnosed Plaintiff with "huge external hemorrhoids with bleeding," and recommended that he see another physician at Coxsackie Medical Facility.  (*Id*. at ¶ 37.)

On or about November 18, 2003, Plaintiff filed a third grievance against the Eastern C.F.

5

medical department.  (*Id*. at ¶ 38.)  In that grievance, Plaintiff alleged that, earlier that day, the medical department "refused [his request for] emergency sick call for profuse bleeding of [his] hemorrhoids."  (*Id*.)

On November 24, 2003, Plaintiff again visited the Coxsackie Medical Facility (pursuant to During that visit, a physician stated that Plaintiff "believes he may have more complicated problems . . . possibly with [regard to his] liver," and that Plaintiff "does not want surgery now, but is considering it if needed."  (*Id*. at ¶ 39.)  In addition, the physician recommended Plaintiff for the "colon rectal clinic."  (*Id*.)

On December 3, 2003, a hearing was held with regard to the grievance that Plaintiff had filed on November 18, 2003.  (*Id*. at ¶ 40.)  After the hearing, the IGRC denied Plaintiff's grievance, stating that Plaintiff's medical condition had not improved because he had refused medical treatment, and that (in any event) Plaintiff's medical condition was not considered to be "an emergency."  (*Id*.)  However, the IGRC "agreed with" Plaintiff's request that "the facility's hospital will be more [thorough] and professional in determining the nature of [Plaintiff's] emergency complaints."  (*Id*. at ¶¶ 38, 40.)

On December 10, 2003, the Eastern C.F. Superintendent affirmed the IGRC's recommendation that Plaintiff's grievance be denied, although, like the IGRC, the Superintendent "accepted" Plaintiff's request that the "medical staff . . . continue to appropriately evaluate emergency complaints."  (*Id*. at ¶ 41.)

On December 19, 2003, Plaintiff appealed the Superintendent's decision to DOCS' Central Office Review Committee ("CORC").  (*Id*. at ¶ 42.)

On December 30, 2003, Plaintiff complained of "bleeding hemorrhoids."  (*Id*. at ¶ 43.)  At

that time, Plaintiff was given cleansing pads.  (*Id*. at ¶ 43.)

On or about January 16, 2004, CORC upheld the decision of the Eastern C.F. Sperintendent with regard to Plaintiff's grievance.  (*Id*. at ¶ 44.)

### 2.    Causes of Action

Based on the foregoing factual allegations, Plaintiff asserts the following causes of action against the three Defendants.  Plaintiff alleges that **Defendant Milecevic** violated his Eighth Amendment right to adequate medical attention, when, as the medical director of Eastern C.F., she (1) failed to acknowledge Plaintiff's complaints about his hemorrhoid condition for more than two years, and (2) repeatedly failed to "authoriz[e]" the treatment recommended by "outside medical doctors."  (*Id*. at ¶ 45.)

Plaintiff alleges that **Defendant Gusman** violated his Eighth Amendment right to adequate medical attention, when she "failed to have plaintiff treated" according to "any of the recommendations made by [Plaintiff's] surgeon," despite knowing of Plaintiff's suffering, his "severe case of bleeding hemorrhoids," and the surgeon's recommendations that Plaintiff "consume a high fiber diet daily, use regular Metamucil . . . [in a quantity of] 1 teaspoon [daily] . . . and receive Anusol HC suppository [daily] . . . ."  (*Id*. at ¶ 47.)  In addition, **Defendant Gusman** violated Plaintiff's Eighth Amendment right to adequate medical attention, when she gave him only "Preparation H, or the generic equivalent of such," despite the fact that the available information indicated that Plaintiff required surgical removal of his hemorrhoids.  (*Id*. at ¶ 52.)

Finally, Plaintiff alleges that **Defendant Riordan** violated his Eighth Amendment right to adequate medical attention, when she failed to provide the IGRC with all the facts regarding Plaintiff's medical condition.  (*Id*. at ¶ 48.)  Specifically, Plaintiff alleges that **Defendant Riordan**

knowingly mislead the IGRC into thinking that he had only a mild case of hemorrhoids, when in fact,

Plaintiff had been complaining for more than two years about his bleeding hemorrhoid condition.

(*Id*. at ¶ 49.)  In addition, Plaintiff alleges that Defendant Riordan "attempted to mislead" the IGRC,

Eastern C.F. Superintendent, and CORC with "erroneous investigatory findings," although Plaintiff

does not specify the nature of those findings.  (*Id*. at ¶ 50.)

> **B.** **Defendants' Motion**

> Generally, Defendants' motion argues that Plaintiff's Complaint should be dismissed for

three reasons: (1) Plaintiff has neither alleged facts indicating, nor adduced any evidence

demonstrating, that Defendants violated his Eighth Amendment rights by being deliberately

indifferent to his serious hemorrhoidal condition and related symptoms; (2) Plaintiff has neither

alleged facts indicating, nor adduced any evidence demonstrating, that Defendants Milecevic or

Riordan were personally involved in the constitutional violations alleged; and (3) Defendants are

protected from liability by the doctrine of qualified immunity.  (Dkt. No. 40, Part 13 [Defs.' Mem. of

Law].)

## II.    APPLICABLE LEGAL STANDARD

> **A.** **Motion for Summary Judgment Under Rule 56**

> Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a

genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[2]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[3] The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[4] "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

When deciding a motion for summary judgment, the facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[6] and are not specifically controverted by the non-movant.[7] Once a movant

---

[1]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[2]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[3]     *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[4]     *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[5]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

[6]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g., Govan v. Campbell*, 289

has filed a Rule 7.1 Statement, the opposing party must file a Rule 7.1 Response.[8]  This Rule 7.1

Response "shall mirror the movant's [Rule 7.1 Statement] by admitting and/or denying each of the

movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation

to the record where the factual issue arises."[9]  A district court has no duty to perform an independent

review of the record to find proof of a factual dispute.[10]  In the event the district court chooses to

conduct such an independent review of the record, any verified complaint filed by the plaintiff should

be treated as an affidavit.[11]

---

F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not
file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the
court will accept the *properly supported* facts contained in the defendants' 7.1 statement.")
[emphasis added].

   [7]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts
shall be deemed admitted unless specifically controverted by the opposing party.</u>").

   [8]     *See* N.D.N.Y. L.R. 7.1(a)(3).

   [9]     (*Id.*)

   [10]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We
agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a
district court to perform an independent review of the record to find proof of a factual dispute.")
[citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir.
Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10,
2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S.
Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary
judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.)
(granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372
(N.D.N.Y. 2003) (Hurd, J.).

   [11]     *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified
pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment.");
*Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to
rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S.
922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be
treated as an affidavit for summary judgment purposes.") [citations omitted].

Here, I note that Plaintiff's Complaint contains a purported "verification."  (*See* Dkt. No. 1, at 18.)  Although this verification is neither notarized nor in strict compliance with 28 U.S.C. § 1746, I will assume, for the sake of argument, that it is effective in converting Plaintiff's allegations into sworn assertions.

In any event, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge."[12]  An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[13]  In addition, such an affidavit (or verified complaint) must not be conclusory.[14]  An

---

[12]     Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[13]     *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[14]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

11

affidavit (or verified complaint) is conclusory if, for example, its assertions lack any supporting

evidence or are too general.[15]  Moreover, "[a]n affidavit must not present legal arguments."[16]

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is

nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated

by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no

reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made

in the complaint."[17]

---

[15]        *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J.,
sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or
trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to
defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec.
Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory
statements that, in essence, asserted merely that there was a dispute between the parties over the
amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985)
(plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me
to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to
satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97
("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a
novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[16]        N.D.N.Y. L.R. 7.1(a)(2).

[17]        *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005)
(affirming grant of summary judgment to defendants in part because plaintiff's testimony about an
alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was
"so replete with inconsistencies and improbabilities that no reasonable juror would undertake the
suspension of disbelief necessary to credit the allegations made in the complaint") [citations and
internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986)
(affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony
regarding an alleged defect in a camera product line was, although specific, "unsupported by
documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of
fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at
*3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted
specific statements by defendants that they were violating his rights, was conclusory and discredited
by the evidence, and therefore insufficient to create issue of fact with regard to all but one of
prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to

**B.      Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

To the extent that a defendant's motion for summary judgment under Rule 56 of the Federal

Rules of Civil Procedure is based entirely on the complaint,[18] such a motion is functionally the same

as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  As a result, "[w]here

appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary

judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-274 (2d Cir. 1968)

[citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds

that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss

the complaint] is proper with or without notice to the parties.").  For these reasons, it is appropriate

to briefly summarize the Rule 12(b)(6) standard.

To prevail on a motion to dismiss for "failure to state a claim upon which relief can be

granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendant must show

"beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle

him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) [citations omitted].[19]  A defendant may

---

prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as
plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in
conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004)
(plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for
summary judgment where that testimony recounted specific allegedly sexist remarks that "were
either unsupported by admissible evidence or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005)
(unreported decision, cited not as precedential authority but merely to show the case's subsequent
history, in accordance with Second Circuit's application of its Local Rule § 0.23).  *See*, *infra*, note
24 of this Report-Recommendation.

        [18]      (*See*, *e.g.*, Dkt. No. 40, Part 13, at 9-15 [repeatedly arguing that Plaintiff "fails to
state a claim," in addition to arguing that the present record creates no issue of material fact].)

        [19]      *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may
dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could

base this motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[20] or (2) a challenge to the legal cognizability of the claim.[21]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a)(2) does

---

be proved consistent with the allegations.") [internal quotations and citation omitted].

[20]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[21]    *See Swierkiewicz*, 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

not require a pleading to state the elements of a prima facie case,[22] it does require the pleading to

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet

this test) (quoting *Conley*, 355 U.S. at 47).[23]   The purpose of this rule is to "facilitate a proper

decision on the merits."  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting

*Conley*, 355 U.S. at 48).  A complaint that fails to comply with this rule "presents far too a heavy

burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful

basis for the Court to assess the sufficiency of [plaintiff's] claims."  *Gonzales v. Wing*, 167 F.R.D.

352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table

opinion).[24]

---

[22]     *See Swierkiewicz*, 534 U.S. at 511-512, 515.

[23]     *See also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[24]     Consistent with the Second Circuit's application of its Local Rule § 0.23, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]); *U.S. v. Casado*, 303 F.3d 440, 449 n.5 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *U.S. v. Terry*, 927 F.2d 593 [2d Cir. 1991]); *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 114 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *Zitz v. Pereira*, 225 F.3d 646 [2d Cir. 2000]); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 57 (2d Cir. 2001) (citing, for similar purpose, unpublished table opinion of *Herman Miller, Inc. v. Worth Capitol*, 173 F.3d 844 [2d Cir. 1999]); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000) (citing, for similar purpose, unpublished table opinion of *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 895 F.2d 1410 [2d Cir. 1989]); *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 586 (2d Cir. 2000) (citing, for similar purpose, unpublished table opinion of *Planned Parenthood Fed'n of Am. v. Bucci*, 152 F.3d 920 [2d Cir. 1998]).  Moreover, I cite *Gonzales* to show a "well-reasoned district court disposition of a similar case," as did the Second Circuit with regard to another case in a similar circumstance in *Carvey v. LeFevre*, 611 F.2d 19, 22 & n.2 (2d Cir. 1979).

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g.*, *Dura Pharm.*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).[25]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]. "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Hernandez*, 18 F.3d at

---

[25]     Several other decisions exist from the Second Circuit affirming the Rule 12(b)(6) dismissal of a complaint due to its insufficiency under Rule 8(a)(2) after *Swierkiewicz*. *See, e.g.*, *Johnson v. U.S.*, No. 03-6054, 2003 WL 22849896, at *1 (2d Cir. Dec. 2, 2003) (relying on pre-*Swierkiewicz* decision by the Second Circuit applying Rule 8[a] and Rule 12[b][6]); *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Second Circuit Local Rule § 0.23, I cite them because they clearly acknowledge the continued precedential effect, after *Swierkiewicz*, of cases from within the Second Circuit interpreting Rules 12(b)(6) and 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

136 [citation omitted].[26]  Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).[27]

Finally, when addressing a *pro se* complaint, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).[28]  Of course, an opportunity to replead should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

---

[26]    *See also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (affirming dismissal under Rule 12[b][6]) [internal quotations and citation omitted].

[27]    Of course, the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) [citations omitted], *accord, Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[28]    *See also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

### III.    ANALYSIS

###    A.    Whether Plaintiff Has Failed to Either State a Claim, or Adduce Any Evidence in Support of a Claim, for Deliberate Indifference to a Serious Medical Need

Generally, to state a claim for deliberate indifference to a serious medical need under the Eighth Amendment, a plaintiff must allege two things: (1) that he had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Here, in light of the legal standard on a motion to dismiss for failure to state a claim, the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, and Plaintiff's special status as a *pro se* civil rights litigant, I will assume for the sake of argument that Plaintiff's hemorrhoid condition, *together with his alleged other health conditions* (which included having a mildly to moderately enlarged prostate, and having had three polyps removed from his sigmoid and transverse colon), constituted a sufficiently serious medical need for purposes of the Eighth Amendment,[29] although I note that this assumption is somewhat difficult to make.[30]

---

[29]    *See, e.g., Snipes v. Oakdale Classification & Med. Ctr.*, 37 Fed. App'x 220, 221 (8th Cir. 2002) (making such an assumption under similar circumstances), *accord*, *Carter v. State Corr. Inst. at Graterford Med. Health Dept.*, 04-CV-3285, 2004 U.S. Dist. LEXIS 26058, at *11 (E.D. Pa. Dec. 28, 2004).

[30]    *See Eddy v. Norrish*, No. 95-15033, 1996 U.S. App. LEXIS 21371, at *7 (9th Cir. Aug. 16, 1996) (plaintiff's claim that defendants violated his Eighth Amendment rights by failing to "promptly treat a hemorrhoid" either alleges a "non-serious medical need[]" or "a mere difference of opinion in treatment between [plaintiff] and the prison medical staff"); *Long v. Blackwell*, No. 93-2482, 1994 U.S. App. LEXIS 1349, at *4 (8th Cir. Jan. 18, 1994) ("A delay of a few days in providing treatment for hemorrhoids did not constitute deliberate indifference to [plaintiff's] medical needs because the delay did not affect 'an acute or escalating situation involving a serious medical condition.'"); *Barr v. Delo*, No. 93-1064, 1993 U.S. App. LEXIS 23839, at *3 (8th Cir. Sept. 17, 1993) ("The appellant has not alleged . . . an acute or escalating situation [with regard to his hemorrhoid condition]. Rather, [appellant's] position is that his hemorrhoid condition was a serious medical condition [solely] because it had previously been treated by a physician and that

The problem with Plaintiff's Eighth Amendment claim is that he neither asserts any factual allegations indicating, nor adduces any evidence establishing, that Defendants were *deliberately indifferent* to any such medical need.  I reach this conclusion after carefully reviewing cases--from both within and outside of the Second Circuit--addressing claims by prisoner-plaintiffs similar to the Eighth Amendment claim that Plaintiff asserts against Defendants.[31]  Specifically, Plaintiff does not

_____

even a lay person would recognize that the condition obviously required medical treatment. . . . [The appellant] failed to meet his burden of proof when he merely alleged his condition had been previously diagnosed and treated."); *Kendall v. Kittles*, 03-CV-0628, 2004 U.S. Dist. LEXIS 15145, at *19 (S.D.N.Y. Aug. 4, 2004) ("Hemorrhoids, albeit uncomfortable, are a minor health issue, far removed from the category of medical conditions that have been deemed 'sufficiently serious' by other courts.") [citing no cases in support of this point of law], *accord*, *Miller v. Kalmanov*, 04-CV-0159, 2006 U.S. Dist. LEXIS 14387, at *5 (N.D. Tex. March 30, 2006) ("[T]he Court finds that hemorrhoids do not constitute a 'serious medical need' as contemplated under the Eighth Amendment.").

[31]     *See, e.g., Snipes*, 37 Fed. App'x at 221 (even if doctor and nurse had denied plaintiff "feminine maxi-pads to control his bleeding" from his internal hemorrhoids, the doctor and nurse could not be deemed to have been deliberately indifferent to plaintiff's condition); *Eddy*, 1996 U.S. App. LEXIS 21371, at *7 (plaintiff's claim that defendants violated his Eighth Amendment rights by failing to "promptly treat a hemorrhoid" either alleges a "non-serious medical need[]" or "a mere difference of opinion in treatment between [plaintiff] and the prison medical staff"); *Long*, 1994 U.S. App. LEXIS 1349, at *4 ("A delay of a few days in providing treatment for hemorrhoids did not constitute deliberate indifference to [plaintiff's] medical needs because the delay did not affect 'an acute or escalating situation involving a serious medical condition.'") [citation omitted]; *Barr*, 1993 U.S. App. LEXIS 23839, at *4-5 ("Without more, a delay of seven days in obtaining treatment [for a hemorrhoid condition] does not constitute deliberate indifference to [plaintiff's] medical needs in violation of the Eighth Amendment."); *Chapman v. Parke*, No. 91-5841, 1991 U.S. App. LEXIS 24359, at *4 (6th Cir. Oct. 4, 1991) ("As a matter of law the undisputed facts [which showed that plaintiff went long periods of time without being treated for his hemorrhoids] show conduct which falls far short of the [E]ighth [A]mendment standard of unnecessary and wanton infliction of pain . . . ."); *Carter*, 2004 U.S. Dist. LEXIS 26058, at *10-14 (granting defendants' motion to dismiss for failure to state a claim, because plaintiff's Eighth Amendment claim that prison medical staff provided negligent and "untimely" medical care for his hemorrhoids did not allege deliberate indifference to his medical condition); *Boyd v. Rhode Island Dept. of Corr.*, 160 F. Supp.2d 213, 218-219 (D. R.I. 2001) (granting defendant's motion to dismiss for failure to state a claim, in part because, even if doctor had in fact failed to take appropriate action to remedy plaintiff's painful hemorrhoid condition, doctor could not be deemed to have been deliberately indifferent to that condition); *Kendall*, 2004 U.S. Dist. LEXIS 15145, at *22 (even if defendants had disregarded

assert any factual allegations indicating, or adduce any evidence establishing, that Defendants' states of mind were equivalent to the sort of *criminal recklessness* necessary for liability under the Eighth Amendment.[32]  At most, Plaintiff alleges *negligence* by Defendants, which is insufficient to state a claim under the Eighth Amendment.[33]  Indeed, more accurately described, Plaintiff's allegations generally consist of his *disagreements* with the rather constant medical care that he was provided by DOCS for his hemorrhoid condition.[34]  This too is insufficient to state a claim under the Eighth Amendment.[35]  In short, according to Plaintiff's own factual allegations (and all factual allegations imaginable, consistent with his Complaint), he was provided all the medical care to which he was

---

plaintiff's request for "personal care" items such as extra surgical dressing to treat plaintiff's hemorrhoid condition, that disregard "did not constitute an excessive risk to inmate health or safety") [internal quotation marks omitted]; *cf. Robinson v. Edwards*, 04-CV-2804, 2006 U.S. Dist. LEXIS 46343, at *31-32 (S.D.N.Y. July 5, 2006) (suggesting that, even if defendants had failed to properly treat plaintiff's "mild gastritis and internal hemorrhoids," that failure alone would not constitute deliberate indifference to a serious medical condition).

[32]    *See Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [under the Eighth Amendment is] equivalent to criminal recklessness . . . .").

[33]    *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

[34]    (*See, e.g.*, Dkt. No. 1, ¶¶ 25-26 [Plf.'s Compl., alleging that his hemorrhoid condition was "related" to his prostate condition], ¶ 39 [alleging that his hemorrhoid problems may be related to his liver, and that he declined surgery as treatment for hemorrhoids on November 24, 2003], ¶ 49 [alleging that Defendant Riordan was incorrect in concluding, from Plaintiff's symptoms, that Plaintiff had only a "mild case of hemorrhoids"], ¶ 52 [alleging that Defendant Gusman failed to realize that "all the information available" indicated that Plaintiff needed surgery to treat his hemorrhoid condition].)

[35]    *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

entitled under the Eighth Amendment.  As the Second Circuit has explained,

> It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls.  [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated.  Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[] understandably seeks . . . .  We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution. . . .  The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . .  The essential test is one of medical necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d. Cir. 1986) (internal quotations and citation omitted).

As a result, I recommend that Plaintiff's Eighth Amendment claim be dismissed for failure to state a claim under a Rule 12(b)(6), or in the alternative for failure to present a material issue of fact under a Rule 56.

> **B.      Whether, in the Alternative, Plaintiff's Claims Against Defendants Milecevic and Riordan Should Be Dismissed Because Plaintiff Has Failed to Either Allege Facts Indicating, or Adduce Evidence Demonstrating, that Those Defendants Were Personally Involved in the Constitutional Violations Alleged**

A defendant's personal involvement in the alleged unlawful conduct is a prerequisite for a finding of liability in an action under 42 U.S.C. § 1983.  *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, such as a DOCS Commissioner, a mere "linkage" to the unlawful conduct

through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

Rather, in order for a supervisory official to be personally involved in unlawful conduct, he or she must have (1) directly participated in that violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Here, I am persuaded by Defendants' lack-of-personal-involvement argument for the reasons stated in their memorandum of law. (Dkt. No. 40, Part 13, at 13-15 [Def.'s Mem. of Law].) For example, Plaintiff's Complaint is devoid of any factual allegations indicating that Defendant Milecevic ever examined or treated him, or had any involvement with his medical complaints; in other words, Plaintiff does not allege any facts indicating that Defendant Milecevic was ever put on notice regarding his condition or the treatment he received or (allegedly) did not receive. (*See generally* Dkt. No. 1, ¶¶ 11-45.) It is worth noting that Plaintiff's Complaint acknowledges that he received treatment from the medical staff at Eastern C.F. almost every time he complained of bleeding hemorrhoids--usually in the form of an examination and suppositories. (*Id*. at ¶¶ 11-44.)

Plaintiff's claims against Defendant Riordan fail for similar reasons. For the sake of

22

argument, I will assume that Plaintiff can state some sort of constitutional claim against Defendant Riordan for (allegedly) intentionally falsifying investigative reports made pursuant to a grievance proceeding, although this conclusion appears to be one of some questionability.  The problem is that Plaintiff has failed to allege facts indicating how Defendant Riordan mislead the grievance committee.  (*Id*. at ¶¶ 48, 50.)  To the contrary, Plaintiff himself acknowledges that Defendant Riordan told the committee that Plaintiff had a "huge external hemorrhoid" and that an evaluation was needed to determine if surgery was necessary.  (*Id*. at ¶ 32.)  Moreover, Plaintiff fails to allege any facts indicating that Defendant Riordan was the recipient of any of his medical complaints or that she was involved in providing any treatment (whether adequate or inadequate) for those complaints.

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendants Milecevic and Riordan based on their lack of personal involvement.

**C.**     **Whether, in the Alternative, Plaintiff's Claims Should Be Dismissed Because Defendants Are Protected from Liability by the Doctrine of Qualified Immunity**

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[36]  In determining whether a particular right was *clearly established*, courts in this Circuit consider three factors:

---

[36]     *Williams v. Smith*, 781 F.2d 319,  322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).

> (1) whether the right in question was defined with 'reasonable specificity';
> (2) whether the decisional law of the Supreme Court and the applicable
> circuit court support the existence of the right in question; and (3) whether
> under preexisting law a reasonable defendant official would have
> understood that his or her acts were unlawful.[37]

Regarding the issue of whether *a reasonable person would have known* he was violating such a

clearly established right, this "objective reasonableness"[38] test is met if "officers of reasonable

competence could disagree on [the legality of defendant's actions]."[39]  As the Supreme Court

explained,

> [T]he qualified immunity defense . . . provides ample protection to all but
> the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is obvious
> that no reasonably competent officer would have concluded that a warrant
> should issue; but if officers of reasonable competence could disagree on
> this issue, immunity should be recognized.[40]

Furthermore, courts in the Second Circuit recognize that "the use of an 'objective reasonableness'

---

[37]    *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992); *see also Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994).

[38]    *See Anderson v. Creighton*, 107 S. Ct. 3034, 3038 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") (quoting *Harlow*, 457 U.S. at 819); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[39]    *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

[40]    *Malley*, 475 U.S. at 341.

24

standard permits qualified immunity claims to be decided as a matter of law."[41]

Here, I find that Defendants are protected by qualified immunity for the reasons stated in their memorandum of law. (Dkt. No. 40, Part 13, at 15-16 [Def.'s Mem. of Law].)  Plaintiff argues that Defendants are not entitled to qualified immunity because a reasonable person would have known that he or she was violating Plaintiff's clearly established Eighth Amendment rights by providing him with "[in]effective ('conservative') treatment for over 1 year before plaintiff was given [a] hemorrhoidectomy."  (Dkt. No. 46 at 20 [Plf.'s Opp. Mem.].)  I disagree.  According to Plaintiff's own factual allegations, Plaintiff was examined and provided with medical treatment every time, or nearly every time, he complained of his hemorrhoid condition.  In addition, he was repeatedly sent to specialists, he received a colonoscopy and surgical removal of three polyps from his colon, and he was recommended for hemorrhoid surgery (which he declined on November 24, 2003).

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendants based on qualified immunity.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 40) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

---

[41]     *Malsh*, 901 F. Supp. at 764 (citing *Cartier v. Lussier*, 955 F.2d 841, 844 [2d Cir. 1992] [citing Supreme Court cases]).

*Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R.

Civ. P. 6(a), 6(e), 72.

Dated: May 9, 2007
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

26